INHABITANTS OF BRIGHTON *vs.* EZRA WILKINSON & others.

The clause in *St.* 1824, *c.* 15, "to authorize the Proprietors of West Boston Bridge to estab-
lish a turnpike road from Cambridge to Watertown," which provides that "neither the
towns of Watertown, Cambridge or Brighton shall ever be compelled to support any part
of said road or bridges, without their own consent," is not in the nature of a contract
between the Commonwealth and those towns that they shall be forever exempt from the
burden of maintaining a highway over the land included within the limits of the turn-
pike road; and *St.* 1859, *c.* 156, "to establish as a highway a part of the turnpike road
from Cambridge to Watertown," is constitutional and valid.

MERRICK, J.[*]   The petitioners pray for a writ of *certiorari*,
to be addressed to the special commissioners named in the bill,
requiring them to certify to this court the record of their pro-
ceedings in laying out and establishing a highway in the town
of Brighton, to the end that the same may be quashed and held
for nought.   It is not contended that, in performing the duty
assigned to them, they failed to observe any requirement of the
statute under which they acted, but that the statute itself is
unconstitutional and void.

It appears from the pleadings, and the several statutes referred
to by the parties, that the Proprietors of the West Boston Bridge
were duly incorporated under that name in the year 1792, with
authority to build and maintain a bridge over Charles River;
and that, by the provisions of their charter and several acts sub-
sequently enacted in addition thereto, the corporation was to
continue in existence for a term of time which has not yet
expired.   *St.* 1791, *c.* 62.   *St.* 1792, *c.* 22.   *St.* 1807, (passed Feb-
ruary 27.)   In 1824 the corporation, by an act of the legislature
passed for that declared purpose, was "authorized and empow-
ered to make and establish a turnpike road" from a certain
designated point in the town of Cambridge to and through the
town of Brighton, and thence to another designated point in the
town of Watertown; "provided that neither the towns of Water-
town, Cambridge or Brighton shall ever be compelled to support

---

[*] HOAR, J. did not sit in this case.

any part of said road or bridges without their own consent." *St.* 1824, *c.* 15. The bridge ways and turnpike road mentioned in these several acts were duly built and constructed, and for many years were maintained, and the pecuniary benefits resulting therefrom were received and enjoyed by the corporation. In 1846 the Hancock Free Bridge Corporation was established, and, in pursuance of authority given for that purpose, purchased and became the owner of the franchise and property, and succeeded to all the rights and liabilities, of the Proprietors of the West Boston Bridge. Under and by virtue of the provisions of *St.* 1857, *c.* 257, the Hancock Free Bridge Corporation surrendered the bridge to the city of Cambridge, and paid, out of the funds it had received as tolls, the sum of $6500 to the town of Brighton ; and was thereupon forever exempted from all future obligation to maintain so much of the said turnpike road, including the bridges and draws in the same, as was within the limits of that town. The town voted to accept said sum of $6500 ; but added to their vote a proviso, " that such acceptance should not be construed as an assent on their part to support and maintain any portion of said road, bridge or draws ; " and a declaration also that they " did thereby distinctly and absolutely refuse to maintain the same."

This determination having been thus expressed by the town, and no measures having in the mean time been adopted to keep the way in repair, the statute entitled " An Act to establish as a Highway a Part of the Turnpike Road from Cambridge to Watertown " was enacted. *St.* 1859, *c.* 156. Under this statute, the respondents, commissioners appointed for that purpose by the supreme judicial court, proceeded to lay out, and did lay out and establish, said part of said turnpike road as a public highway, according to the provisions of the statute. The petitioners contend that all their proceedings were unlawful, and should, with the record thereof, be declared to be inoperative, because the provisions of the statute under which they took place were in violation of the constitutional rights of the petitioners, and of the several owners of the land over which the highway was laid.

To sustain this proposition, they insist, in the first place, that the proviso in *St.* 1824, *c.* 15, above recited, constitutes a grant by the Commonwealth of a perpetual immunity from any charge or expense for the support of said road upon the inhabitants of the town, without their consent; that this grant is a contract, or stipulation in the nature of a contract, the obligation of which cannot be impaired by any act of legislation. Const. of U. S. art. 1, § 10. *Dartmouth College* v. *Woodward*, 4 Wheat. 518. The principle upon which they rely, that the grant of a franchise by the government to a corporation is a contract, the obligation of which is inviolable, is undoubtedly well established. But they are in no situation to avail themselves of it, because it is not applicable to the facts proved in the present case. For, as between the Commonwealth and them, there never was any grant or contract in relation to the turnpike road, which the Proprietors of the West Boston Bridge were authorized to make, establish and maintain. The grant of power for this purpose to that corporation created no new or distinct franchise, but was a mere enlargement of, and additional and auxiliary to, that which it then already possessed under its original charter. *Commonwealth* v. *Hancock Free Bridge Corp.*, 2 Gray, 58. And, consequently, that corporation was the only party upon whom a privilege was conferred, or a restraint imposed, by the additional statute. The proviso, which was annexed to this grant of power, to lay out and maintain a turnpike road leading to their bridge, and tending, by preventing diversions of it in other directions, to secure a large share of public travel over it, was evidently intended as a restriction, to operate exclusively upon the Proprietors of the West Boston Bridge. It was simply a requirement that they should do nothing, by means of their road, to create any charge upon the towns through which it should pass, or subject them to any expense; but that they should, on the contrary, during the whole period of their corporate existence, do whatever might be found necessary to prevent the imposition of such burden upon them. Their charter, with the acts additional to it, constituted a contract or contracts between them and the Commonwealth, to which they were the

3*

only parties. The towns within whose limits the turnpike road was to be located were not, in their corporate capacity, to be affected by it. They had no duty to perform concerning it; but its use was to be enjoyed by their inhabitants substantially upon the same terms as, and in common with, the rest of the community — though having the advantage over others of travelling upon it within their respective towns free of toll. It is an error to suppose, as was suggested in argument by the counsel for the petitioners, that there was a contract with the town because a large quantity of taxable property was taken for and appropriated to the turnpike road, thus diminishing the aggregate amount of estates in the town liable to taxation, and increasing, to an equal extent, the tax to be assessed on the estates which remained. This is certainly not made very clearly to appear. It is possible that the compensation paid to resident owners of the land taken may have increased the taxable personal, as much as its appropriation of land for the road lessened the taxable real, estate; it is much more probable that the completion and maintenance of the way by the Bridge Corporation was of such general and public advantage, as to add to the remaining land the full value of all that which was covered by the location. But even if some diminution in the actual value of the taxable estate in a town or city should incidentally result from the grant of a charter to a turnpike or railroad corporation, the former would not for that reason, or on that account, acquire any such interest in its provisions as to make them a party to the contract resulting from it, or give them a right to complain of the infraction of any stipulations contained in it.

By the original act of incorporation, it is provided that, upon the expiration of the term during which the Proprietors of the West Boston Bridge were to exist, the bridge should be surrendered in good, safe and passable repair to the Commonwealth. This, by necessary implication, includes the franchise, bridge, ways and structures existing at the time such surrender should take place. This surrender would necessarily occur at the expiration of the time limited for the existence of the corporation; and that term might be enlarged or reduced, at the pleasure, and

by the mutual consent, of the parties who had a right to act and decide in relation to it. They have effectually exercised this right. The Hancock Free Bridge Corporation having acquired the franchise, interest and estate of the Proprietors of the West Boston Bridge, for an apparently satisfactory consideration, transferred the bridge to the city of Cambridge, and have since accepted from the Commonwealth a release and discharge from all obligation or liability to support the bridge, or any of the roads and ways leading to it. The effect of these proceedings is to take from the corporation all its rights, and to relieve it from all duty and responsibility, and therefore substantially to terminate its legal existence. The turnpike road constructed under its charter, as amended and enlarged, immediately thereupon reverted to and became vested in the Commonwealth. It then devolved upon the legislature to determine what disposition should be made of it. The subsequent statute in relation to it was in effect a determination that public convenience and necessity required the location and establishment of a common highway over all the land included within the limits of the turnpike road. Under and in pursuance of its provisions, the respondents, as special commissioners appointed for that purpose, laid out and established the highway of which the petitioners complain. To this road the proviso in the charter of the Proprietors of the West Boston Bridge can have no application. Their turnpike road, together with the franchise of the corporation, had reverted to and become the property of the Commonwealth, and the corporation had in effect been discontinued, and had ceased to exist. The rights and liabilities of the several towns through which the new highway, substituted and established in the place of the turnpike road, passed. could not be affected by any provisions in the charter of the bridge corporation, but arise from, and are regulated by, the provisions of general statutes, which are applicable to, and define the duties and establish the obligation of, all municipal corporations. Rev. Sts. *c*. 25, § 1.   Gen. Sts. *c*. 44, §§ 1 & *seq.*   The petitioners therefore can claim no exemption from the expense of constructing and of repairing and maintaining this new highway, under the

provisions of a charter creating a contract to which they were never a party, and which, having no object upon which it can operate, must be considered as no longer in force.

In relation to the further ground of objection to the validity of the *St.* 1859, *c.* 156, namely, that it makes no provision for the payment of damages to the owners of lands taken for said highway, nor for giving notice to them of any hearing under said act, which is urged by the petitioners, we do not think that the writ of *certiorari* prayed for should issue upon their application alone. It does not appear that any person claiming to have any interest in the land taken has felt aggrieved, through any want of adequate provision for the protection of his rights, or has desired or now desires to have possession of the land, or to interfere with the appropriation of it to the public use, as a common highway. If there be, in fact, one or more persons who have a personal interest in the land, and they are all perfectly content and satisfied with the disposition which has been made of it, an easement required by public convenience and necessity, and created for the common good, ought not to be annulled or interfered with upon the complaint of strangers to the title.

It may, however, well be doubted whether there is any person who has an interest in the soil, upon which, under the circumstances, he would have a right to insist, to sustain any claim to damages which he might assert. For, upon the location of the turnpike road under the amended charter of the Proprietors of the West Boston Bridge, provision was made for the compensation of all the owners of land over which the turnpike road should be located, for the whole term for and during which the road was to exist. And as the franchise and road of the corporation were, upon its termination, to revert to and be the property of the Commonwealth, the right acquired to the land for a highway was therefore a right to its perpetual use for that purpose. This was a right which, it would seem, might be granted by the Commonwealth to the several towns through which it passed, upon the location over it of a new common public highway. If this is correct, there was no occasion for any provision in the statute

concerning the supposed rights of individual proprietors; and the omission of any can in no way affect its validity.

In view of these conclusions, it becomes unnecessary to determine the legal effect of the proviso and declaration, that they would not take upon themselves the burden of maintaining the highway laid out in their town, which accompany and make part of the vote of the inhabitants of Brighton to accept the sum of $6500 from the Hancock Free Bridge Corporation. Somewhat similar proceedings took place on the transfer of the franchise and property of the Proprietors of the West Boston Bridge to them; and in that case the proviso and protest under which the deed of conveyance was accepted were held to be wholly ineffectual. *Commonwealth* v. *Hancock Free Bridge Corp.*, *ubi supra*. Unless their agreement to keep the road in repair for the future can be implied by law from their acceptance of the money which was paid to them, it would result, as a necessary consequence, that they received it entirely without consideration. But the court do not upon this ground deny the prayer of the petitioners. It might deserve further consideration, if other reasons for refusing it were not deemed satisfactory and conclusive against the claims which they prefer.

It has not been deemed necessary to consider the objection urged by the respondents, that no writ of *certiorari* could properly be addressed to the special commissioners by whom the public highway was laid out and established, because it is manifest that, upon other grounds, the bill cannot be maintained. But it cannot escape observation, that the only existing record of their proceedings has been made upon their return of their doings, as is required by law, by the county commissioners of the county of Middlesex. *Bill dismissed.*

*J. G. Abbott & S. L. Plumer*, for the petitioners.

*I. J. Austin*, for the respondents.